WALLACE STEPHENS, FOR HIMSELF IN A REPRESENTATIVE CAPACITY FOR AND IN BEHALF OF ALL OTHER DULY CONFIRMED MEMBERS OF THE FIRE DEPARTMENT OF THE CITY OF BILLINGS, MONTANA, PLAINTIFF AND APPELLANT, *v.* THE CITY OF BILLINGS, MONTANA, A MUNICIPAL CORPORATION, WILLARD FRASER, MAYOR, OF THE CITY OF BILLINGS, H. E. BIDDINGER, WAYNE CHESTNUT, HENRY COX, CHARLES GLENN, H. H. HULTGREN, WILLIAM JULL, J. A. LEONE, JAMES PATTEN, DUANE SMITH, AND A. G. WENDTE, MEMBERS OF THE CITY COUNCIL, CITY OF BILLINGS, MONTANA, DEFENDANTS AND RESPONDENTS.

No. 11109.
Submitted November 10, 1966. Decided December 15, 1966.
Rehearing denied January 24, 1967.
422 P.2d 342.

Sandall, Moses & Cavan, Charles F. Moses (argued), Billings, for appellant.

Maurice R. Colberg, Jr. (argued), Billings, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in favor of the defendants in a declaratory judgment action brought by plaintiff to seek a determination of the rights of firemen to promotion according to seniority. The defendants will be referred to as the city. The district court ordered all firemen to be added as plaintiffs, and they will collectively be referred to as the firemen.

The issue is whether ordinance No. 3114, enacted by the Billings City Council on March 15, 1965, repealing section 2.2 of the Code of the City of Billings, is unconstitutional as retrospective legislation affecting vested contract rights in contravention of the Constitutions of the United States and of the State of Montana.

To determine this, we have to determine whether the Billings firemen had a vested contract right in section 2.2 of the Code thus prohibiting its repeal as to them.

The district court found that the firemen had not proved by a preponderance of the evidence that they had a vested contract right in section 2.2.

Section 2.2, for our purposes here, was adopted in 1950. It established seniority rules. It provided as follows:

"Sec. 2.2. Seniority rule for employees. The following seniority rules for city employees are hereby adopted:

"1. *Observance.* Seniority of employment of permanent employees shall be observed in all city departments.

"2. *Lists.* Each city department shall make up lists of employees according to seniority and as to classifications where different rates of pay apply within the department. Where two or more men are hired or appointed the same day, seniority shall be determined by alphabetical list of those appointed.

"3. *Present status.* The present status and job of regular employees shall continue subject to such changes based on seniority as herein set forth as may arise in the future.

"4. *Leaving employment.* Employees who leave city employment, voluntarily or otherwise, will lose all seniority privileges. Where employees are granted leaves of absence, which leaves will be for a maximum of sixty days, seniority will continue to accumulate. Leaves-of-absence employees will not be allowed to accept employment elsewhere.

"5. *Judging capability.* The head of each department shall be the judge of the capability of the employees under him. In case of disagreement between employees and department heads relative to seniority or capability, the department head's decision will be subject to review and final determination by a board of review.

"6. *Promotion within department; probationary period.* When a promotion within the department is available the employee with the greatest seniority will be given the promotion on a temporary basis and will be given reasonable instruction in the duties of the new job. If, within thirty days, he shows he is qualified, the promotion will become permanent. If it is apparent within a shorter time that he cannot satisfactorily handle the job, he will be returned to his previous job but will not lose his seniority. The employees next in line will then receive the promotion, subject to the above rules.

"7. *Demotion and discharge; review.* Where city employees

may be capable of the job assigned to them but their attitudes are such that they do not get along with the public or fellow employees, they may be demoted or discharged after reasonable investigation. Final determination under this rule shall be made by the board of review.

"8. *Lay-offs; rehiring.* Lay-offs shall be made by laying off the employee with the least seniority and in case of rehiring, the laid-off employee with the most seniority will be hired first. In order to be eligible for rehiring an employee shall leave his address with the department head and when he is called back to work he will be given two weeks within which to report.

"9. *Placement without taking seniority into account.* If a position is open in a higher classification for thirty days or less, department heads can place a man in this position without taking into account seniority.

"10. *Specialized jobs.* In specialized jobs requiring special skills or training, seniority may be waived.

"11. *Exceptions.* Seniority will not necessarily apply to the appointment of department heads, superintendents or other appointive employees, or to drivers of fire trucks or members of the police department.

"12. *Unsatisfactory work.* Seniority will not protect an employee in his job if his work is unsatisfactory, but in such instance he may be demoted or discharged.

"13. *Board of review.* There shall be appointed a board of review to which can be appealed any decision of the department head relative to seniority where such decision is questioned by the employee; provided, that such appeal shall be made in writing to the board of review in care of the city clerk within ten days after the grievance occurs. This board of review shall be appointed by the mayor, subject to the approval of the city council. It shall consist of five members, four of whom shall be city councilmen, but no two such councilmen shall be selected from any one ward, and the fifth member shall be designated by the mayor from outside the council.

"14. *Amendment*. The above rules may be added to or altered by appropriate action of the city council. (Ord No. 2276, § 2)."

The foregoing section 2.2 remained in effect until it was repealed on March 15, 1965, by Ordinance No. 3114. On June 14, 1965, Ordinance No. 3141 amending Ordinance No. 3129 was adopted which provided generally that everything being equal in ability and efficiency, seniority shall govern.

Thus, a seniority system is changed in large part to a merit system. It is this change by the Council that firemen challenge.

Previously we have stated that we must determine if the firemen had a vested contract right. So our inquiries are (1) Did the City of Billings enter into a contract with each separate fireman as to seniority? (2) Did the mere enactment of section 2.2 create a contract?

Some 62 firemen testified, all saying practically the same thing, that they were told about seniority by someone, or understood it. Some of the firemen were hired before section 2.2 was adopted. Some discussed seniority as it applied to vacations, position of riding the fire engine, who was in charge in the absence of a senior man, etc. Each fireman, in effect, admitted no contract was made, but an attempt was made to show a course of conduct or a long-standing policy of promotion using seniority . But even those witnesses who insisted on this amitted that the rule or policy was not followed. We shall not further analyze the testimony multiplied by 62. Suffice it to say no contract as to seniority was established and the trial court so found. We need not, here, concern ourselves with whether such contract could be legally made.

The foregoing conclusion that no vested contract right as to seniority was proven seems patently clear. But, the firemen cite a recent opinion of this court, Bartels v. Miles City, 145 Mont. 116, 399 P.2d 768, as standing for the proposition that an oral contract of employment existed by reason of an interview between a policeman, Bartels, and the Police Chief or

Police Commissioner, and that this is "exactly the same manner" as vested rights were created here.

First of all, our discussion does not concern itself with whether a contract of employment existed or exists between the City of Billings and each fireman. Of course it does. Our discussion, rather, concerns itself with whether a vested contractual right in "seniority" as it applies to promotions exists. In the Bartels case, Bartels contributed three per cent of his monthly salary to a pension fund established by state law. This court observed that "For all intents and purposes the respondent [Bartels] had worked on the police force for twenty years" (the requirements of state law). The city's attempts were found to be contrary to state law.

Again the facts here show many of the firemen plaintiffs were hired prior to the existence of ordinance section 2.2 and those who were hired after only had conversations about it. Just how conversations or undertsandings about such conditions of employment as shift schedules, vacation schedules, fire-truck positions, or promotion policies change to "vested rights" we are unable to determine.

This would be true whether the rule was passed by the City Council or not. But here another inquiry is pertinent. Was the legislative rule intended to confer a contractual right? Clearly here, as previously quoted, section 2.2 stated that "the above rules may be added to or altered by appropriate action of the city council." It seems clear from the language used that no vestment of contractual rights was intended.

Just what status "seniority rights for promotion" under section 2.2 has we need not determine definitively. However, in an annotation in 90 A.L.R.2d 988, it is pointed out that the preference (seniority) is usually not absolute. In all situations examined, very close examination of language was had.

Now then, to carry our inquiry a step further, even were we to concede that section 2.2 did establish seniority rights as such with a public agency, could it be changed by that same public

agency? Again our inquiry is brought back to whether such a right vested that it cannot be altered by statute. To answer this we shall look to cases involving teachers' tenure statutes.

In an annotation on teachers' tenure statutes appearing in 147 A.L.R. 293, it is said:

"It is quite generally conceded that a teachers' tenure statute may be so worded as to disclose a legislative intention to confer upon the teachers coming within the provisions of the act contractual rights which may not be taken away from them by subsequent legislation repealing or modifying the act. * * *

*"On the other hand it is almost unanimously recognized that in the absence of any language in the act evincing an intention to confer upon the teacher a contractual right, the mere recognition by such acts of the status of permanency of tenure does not create in the teachers qualifying thereunder as permanent teachers vested contractual rights immune from legislative encroachment by subsequent repealing or modifying statutes, but merely declares a legislative policy, to continue so long as the legislature may ordain,* for the protection of such teachers from arbitrary or corrupt action of administrative boards in dismissing them or refusing to re-employ them, without justifiable cause.

"Where the terms of the repealing or modifying act were such that it was clear that the legislature did not intend to confine the operation of such act to tenures to be acquired subsequently to its enactment, and where also the terms of the tenure act, did not evince a legislative intention to create in the tenure teacher's contractual rights, the courts have not hesitated to give such repealing or modifying statute retroactive effect so as to affect tenures acquired prior to its enactment." (Emphasis supplied.)

And in the same annotation at page 296 it is said:

"On the other hand, where there is nothing in the Teacher's Tenure Act by which the legislature evinces an intention of creating contract rights in the teachers qualifying thereunder, and the act confers upon the teachers merely .the status of a

permanent teacher, that status or any rights incident thereto may be taken away from him or modified by a subsequent statute which expressly repeals or modifies the Tenure Act."

Now, then, even though tenure statutes may be on a somewhat different basis than ordinance No. 2.2, yet the same reasoning applies as we have developed hereinbefore.

Finally, the appellant firemen urge that the City is estopped from denying seniority benefits. The firemen urge two grounds: (1) that they have worked long years and (2) have worked hard. These two reasons they urge bring forth the statement of this court in Bartels v. Miles City, supra, that it would be grossly unfair and inequitable to deprive the respondent of his right to retire after twenty years of faithful service and withhold from him the pension payment which he has earned and looked forward to receiving.

We are simply unable to liken an individual's rights to collect retirement from a fund to which he contributed in contradistinction to a group of 64 firemens' rights to seniority rules. We therefore reject any estoppel theory.

Finding no grounds for reversal of the district court's judgment, we affirm.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, DOYLE and ADAIR, concur.